## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.

KENDRA F. PONIATOWSKI AND NATE
PONIATOWSKI, wife and husband

Plaintiff,

v.

ALLERGAN INC.,
ALLERGAN USA, INC.,
and DOES 1-100, inclusive

Defendants.

---

## COMPLAINT FOR DAMAGES

---

Plaintiffs Kendra F. Poniatowski and Nate Poniatowski, wife and husband (hereinafter "Plaintiffs"), by and through her attorneys, based on information and belief, and for causes of action against the Defendants, ALLERGAN, INC. and ALLERGAN USA, INC. (hereinafter collectively referred to as "Defendants"), and each of them, hereby allege as follows:

## I.        INTRODUCTION

1.      Plaintiffs bring this action against Defendants, and each of them, in relation to the design, manufacture, marketing, labeling, and distribution of Allergan's Natrelle® Silicone breast implants (the "Product"), the pervasive, reckless, and continuous failure to comport with the Premarket Approval Application ("PMA") requirements imposed by the Food & Drug Administration ("FDA"), and failure to warn consumers of the known dangers and known adverse events.

2.      Defendant Allergan is a global leader in aesthetic medicine, and a market

leader in breast aesthetics.

3.      Plaintiffs bring this action against Defendants in relation to the design, manufacture, marketing, and distribution of Allergan's Natrelle® Silicone breast implants, the repeated failure to follow the requirements imposed by the FDA, failure to warn consumers and healthcare providers of known dangers and known adverse events, and reckless violation of state law.

## II.      PARTIES, JURISDICTION, AND VENUE

4.      At all times relevant hereto, Plaintiffs Kendra F. Poniatowski and Nate Poniatowski are citizens and residents of Denver, Colorado.

5.      ALLERGAN INC. is a Delaware Corporation with its principal place of business in California.

6.      ALLERGAN USA, INC. is a Delaware Corporation with its principal place of business in New Jersey.  Upon information and belief, it is a wholly owned subsidiary and controlled by Allergan, Inc.

7.      At all relevant times, each Defendant acted in all aspects as the agent and alter ego of each other.  The combined acts and/or omissions of each Defendant resulted in indivisible injuries to Plaintiffs.  Each of the above-named Defendants is a joint tortfeasor and/or co-conspirator and is jointly and severally liable to Plaintiffs for the negligent acts and omissions alleged herein.  Each of the above-named Defendants directed, authorized, or ratified the conduct of each and every other Defendant.

8.      At all relevant times, Defendants acted in concert with one another in the State of Colorado to fraudulently convey false and misleading information concerning Allergan's Natrelle® Silicone filled breast implants and concealed the risks of serious adverse events associated with their breast implants from the public, Plaintiffs, physicians, and other healthcare providers.  These concerted efforts resulted in significant harm to Plaintiffs.  But for the actions of Defendants, individually, jointly, and in concert

with one another, Plaintiff Kendra F. Poniatowski would not have been implanted with Allergan Natrelle® Silicone breast implants and would not have suffered severe injuries.

9.      This Court has personal jurisdiction over Defendants.  Defendants are and were at all relevant times residents of and/or authorized to conduct business in the State of Colorado, and Defendants conducted such business within the State, including the performance of acts that caused or contributed to the harm giving rise to this action.

10.      At all times material hereto, Defendants maintained systematic and continuous contacts in this judicial district, regularly transacted business within this judicial district, employed numerous individuals in this district, and regularly availed themselves of the benefits of this judicial district.  Defendants received substantial financial benefit and profits as a result of the designing, formulating, testing, packaging, labeling, producing, creating, constructing, making, assembling, advertising, clinical testing, marketing, promoting, distributing, manufacturing, and selling the product in this district and throughout the United States.  At all times material hereto, the action arises from obligations that arise out of, or are connected with, Defendants' activities within the State of Colorado.

11.      Plaintiffs' claims arise out of and/or are related to Defendants' Colorado-related forum activities.  Plaintiffs are informed and believe, and on that basis allege, that Defendants have purposefully directed their activities at this forum State, and the exercise of jurisdiction is reasonable and would not offend the traditional notions of fair play and substantial justice.  Plaintiffs are informed and believe, and on that basis allege, that Defendants have purposefully availed themselves of the privileges and benefits of conducting activities within the forum State and have invoked the benefits and protections of its laws.

12.      Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391, because a substantial part of the events and omissions giving rise to the claim occurred in this District, and because Defendants conduct substantial business in this District.

13.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, because the amount in controversy as to Plaintiffs exceeds $75,000.00, exclusive of interest and costs, and because there is complete diversity of citizenship between Plaintiffs and Defendants.

## III.    DESCRIPTION OF ALLERGAN NATRELLE® SILICONE BREAST IMPLANTS

### A.    General Information Relating to Breast Implants

14.    Silicones, which are also called polysiloxanes, are polymers that include a synthetic compound made up of repeating chains of alternating silicon and oxygen atoms, frequently combined with carbon and/or hydrogen.  Silicones are typically heat-resistant and rubber-life, and are used in sealants, adhesives, lubricants, medicine, cooking utensils, and thermal and electrical insulation.  Being purely synthetic, silicones do not exist in nature.

15.    A breast implant is a prosthetic product used to change the size, shape, and contour of a woman's breast.  There are three general types of breast implant products, defined by their filler material: saline solution, silicone gel, and composite filler.

16.    Silicone gel-filled breast implants have a silicone outer shell that is filled with silicone gel.  They are available in various sizes and can have either a smooth or textured shell.  Silicone gel-filled breast implants are approved for breast augmentation in women age 22 or older and for breast reconstruction in women of any age.

17.    In 1976, Congress passed the Medical Device Amendments ("MDA") to the Federal Food, Drug and Cosmetic Act ("FDCA").  Upon enactment of the MDA, the FDA deemed saline-filled breast implants as Class II devices, to be reviewed through a premarket notification process.  The devices could be publicly sold so long as manufacturers later provided "reasonable assurance" of the products' safety and effectiveness.  21 U.S.C. § 360e(d)(2).

18.    In 1988, in response to growing safety concerns, the FDA re-classified both saline-filled and silicone gel-filled breast implants as Class III devices requiring premarket

approval ("PMA").

19.     In April 1991, upon final publication of new regulations, the FDA began requiring breast implant manufacturers to obtain specific approval by the FDA for any silicone gel-filled breast implants.

20.     Through its PMA process, the FDA engages in scientific evaluations of the safety and effectiveness of Class III medical devices.  The FDA considers Class III devices to create the greater risk to human safety, necessitating the implementation of special controls, including the requirement to obtain PMA under 21 U.S.C. § 360 prior to marketing the product to the public.

21.     A PMA application must contain certain information which is critical to the FDA's evaluation of the safety and efficacy of the medical device at issue.  A PMA and/or PMA Supplement application must provide:

    a.    Proposed indications for use;

    b.    Device description, including the manufacturing process;

    c.    Any marketing history;

    d.    Summary of studies (including non-clinical laboratory studies, clinical investigations involving human subjects, and conclusions from the study that address benefit and risk);

    e.    Each of the functional components or ingredients of the device;

    f.    Methods used in manufacturing the device, including compliance with current good manufacturing practices; and

    g.    Any other data or information relevant to an evaluation of the safety and effectiveness of the device known or that should be reasonably known to the manufacturer from any source, including information derived from investigations other than those proposed in the application from commercial marketing experience.

22.     Where Conditional Premarket Approval ("CPMA") is granted, a device

marketed by a manufacturer which fails to perform any requirements of the CPMA is considered to be adulterated under § 501 of the FDCA and may not be further marketed.

23.     In November 1991, the FDA held an Advisory Panel meeting to discuss several PMAs for silicone gel-filled breast implants.  While the Advisory Panel concluded that the manufacturers had failed to provide adequate safety and effectiveness data for their implants, the Panel unanimously recommended that the FDA permit the implants to remain on the market.

24.     In January 1992, the FDA announced a voluntary moratorium on silicone gel-filled breast implants, requesting that the manufacturers stop supplying them and that surgeons stop implanting them while the FDA engaged in a further review of the products' safety and effectiveness.

25.     In April 1992, the FDA determined that none of the PMAs submitted for silicone gel-filled breast implants contained sufficient data to support premarket approval for silicone breast implants.  From that time, implantation of the products in the United States was limited to reconstruction and revision patients.

   **B.   Information Specific to Allergan Breast Implants**

26.     Allergan's silicone gel-breast implants are Class III medical devices.

27.     Allergan's silicone-filled breast implants received premarket approval from the FDA in November 2006, marking the first time in fourteen (14) years that silicone-filled breast implants were available for elective augmentation in addition to reconstruction and revision.

28.     The November 2006 approval was based largely on three-year data reported from a study of Allergan's Natrelle® round cohesive gel implants.

29.     As conditions of the 2006 approval, the FDA required Allergan to conduct six post-approval studies to characterize the long-term performance and safety of the devices.  The post-approval studies for Allergan's Natrelle® silicone filled breast implants included:

1.      Core Post-Approval Study (Core Study) – To assess long-term clinical performance of breast implants in women that enrolled in studies to support premarket approval applications.  These studies were designed to follow women for 10 years after initial implantation.

2.      Large Post-Approval Study (Large Study) – To assess long-term outcomes and identify rare adverse events by enrolling more than 40,000 silicone gel-filled breast implant patients, following them for 10 years.

3.      Device Failure Study (Failure Study) – To further characterize the modes and causes of failure of explanted devices over a 10-year period.

4.      Focus Group Study – To improve the format and content of the patient labeling.

5.      Annual Physician Informed Decision Survey (Informed Decision Study) – To monitor the process of how patient labeling is distributed to women considering silicone gel-filled breast implants.

6.      Adjunct Study – To provide performance and safety information about silicone gel-filled breast implants provided to U.S. women from 1992-2006, prior to approval, when implants could only be used for reconstruction and replacement of existing implants.

30.     The primary responsibility for timely and accurately communicating complete, accurate, and current safety and efficacy information related to the medical device, such as Allergan's Natrelle® silicone-gel breast implants, rests with the manufacturer.

31.     This primary reporting obligation instills in the manufacturer a duty to vigilantly monitor all reasonably available information, to closely track clinical experiences, and to fully and promptly report all relevant information, specifically but not

limited to adverse events, to the FDA, the healthcare community, and consumers.

32.     Also, under state law, which does not impose duties or requirements materially different from those imposed by federal law, the manufacturer must precisely monitor its own manufacturing and quality control processes, and its market representations and warranties.

33.     When monitoring and reporting adverse events, especially those indicating an association between their product and breast cancer, Anaplastic Large-Call Lymphoma ("ALCL"), and/or Breast Implant-Associated Anaplastic Large-Cell Lymphoma ("BIA-ALCL"), as required by both federal regulations and Colorado state law, time is of the essence.

34.     Delayed reporting prevents the healthcare community and the public from timely learning of risks which must inevitably play a part in their decision-making, by both physicians and consumers, regarding treatments and procedures, and thereby exposes countless additional women to potential harm.

35.     Specifically, Allergan's obligations after the PMA included, but are not limited to:

   a.    Reporting to the FDA information suggesting that one of the manufacturer's devices may have caused or contributed to a death or serious injury, or has malfunctioned and would be likely to cause death or serious injury if the malfunction were to recur [21 CFR §803.50];

   b.    Monitoring the product and reporting to the FDA any complaints about its performance and any adverse health consequences that are or may be attributable to the product [21 CFR §814];

   c.    Submitting a PMA supplement for any listed or material changes to the product [21 CFR §814.39];

   d.    Establishing and implementing a quality policy which all aspects of

the manufacturer's operations must meet [21 CFR §820.20];

e.   Establishing and maintaining procedures for validating the device design, including testing of production units under actual or stimulated use conditions, and creation of a risk plan and conduction of risk analyses [21 CFR §820.30];

f.   Documenting all Corrective Action and Preventative Actions taken by the manufacturer to address non-conformance and other internal quality control issues [21 CFR §820.100];

g.   Establishing internal procedures for reviewing complaints and event reports [21 CFR §§ 820.198, 820.100, 820.20];

h.   Establishing Quality Management System (QMS) procedures to assess potential causes of quality problems, including non-conforming products [21 CFR §§820.70 and 820.90];

i.   Reporting on Post-Approval Studies in a timely fashion [21 CFR §814.80];

j.   Advertising the device accurately and truthfully [21 CFR §801].

36.   The overall follow-up rate was 65% at 10 years.  The Final Report was submitted in year 5 of the study in 2011.

37.   Allergan failed to report adverse events from the post-market approval studies commissioned as part of the implant's PMA approval, which would have led to reports suggesting the device's contribution to serious injury.

38.   Had Defendants not intentionally failed to comply with their clearly-established post-market surveillance obligations, Plaintiff Kendra F. Poniatowski would have decided against implantation and her injuries would not have occurred.

39.   Under applicable state law, which does not impose duties or requirements materially different from those imposed by federal law, Allergan had a duty to exercise reasonable care in adequately warning Plaintiff and/or Plaintiff's treating and implanting

medical professionals about the dangers of Allergan's Natrelle® silicone-filled breast implants and about all adverse events of which Allergan became aware, and had a post-market duty to identify, monitor, and report all adverse events and all risks associated with the product.

40.     Despite having knowledge and possession of evidence showing that the use of Allergan's Natrelle® silicone-filled breast implants was dangerous and likely to place consumers' health at serious risk, as will be detailed further below, Allergan refused, or recklessly failed to identify, disclose, and warn of the health hazards and risks associated with the product and about all adverse events which were known to Allergan.

41.     Instead, Defendants marketed, advertised, and promoted the product while at the same time consciously refusing and/or recklessly failing to monitor, warn, or otherwise ensure the safety and efficacy for users of the Allergan's Natrelle® silicone-filled breast implants.

42.     At all relevant times, Defendants advertised and marketed their Natrelle® breast implants as safe for use by women and "designed TO PROTECT" and that the "gel in Natrelle® gummy implants is surrounded by a state-of-the-art breast implant shell that is designed to keep the gel inside."   *See* https://www.natrelle.com/gel-technology (all capitals in original).

43.     Under applicable state law, which does not impose duties or requirements materially different from those imposed by federal law, Allergan had a duty to revise its product labeling after becoming aware of otherwise undisclosed dangers in its silicone-filled breast implants products.  Allergan refused or recklessly failed to do so.

44.     Under applicable state law, which does not impose duties or requirements materially different from those imposed by federal law, Allergan was required at all material times to promptly report any information suggesting that one of its products may have contributed to a serious injury or had malfunctioned and the malfunction would be likely to contribute to a serious injury if it were to recur.

45.     The PMA provided as follows: "Failure to comply with any post-approval requirement constitutes a ground for withdrawal of approval of a PMA.  Commercial distribution of a device that is not in compliance with these conditions is a violation of the act."

46.     Allergan's insufficient follow-up rates and inadequate data, as detailed above, establish and confirm Allergan's reckless and intentional disregard for the safety of hundreds of thousands of women.

47.     Each of the above-cited deficiencies in Allergan's post-market compliance, including those described above, was a "failure to comply with any post-approval requirement" and each constituted a ground for withdrawal of the PMA.  Defendants' conduct separately violated their duties under the law.

48.     Notwithstanding Allergan's failures to comply with post-approval requirements, including the failures described above, Allergan continued to commercially distribute its silicone-filled breast implants.  As expressly provided in the PMA, such distribution was a violation of federal law.

49.     Had Allergan substantially complied with the PMA, rather than flagrantly under-performing the post-approval requirements as alleged above, Allergan's disclosures would have led to much wider knowledge of the risks associated with Allergan's products.  In addition, Allergan's physician and patient labeling would have materially changed over time, and patients, including Plaintiff, and medical providers including Plaintiff's physicians, would not in ignorance have purchased or implanted Allergan's products had they had knowledge of the risks, including, but not limited to, the causative association to Breast Implant Associated-Anaplastic Large Cell Lymphoma.

50.     Specifically, Defendants knew or should have known that the new breast implants were associated with Anaplastic Large Cell Lymphoma.

51.     To protect Allergan's Natrelle® silicone-filled breast implant brand, Defendants intentionally failed in their post-market surveillance obligations, and thereby

consciously and deliberately concealed their knowledge of known safety risks from the FDA, the medical community, and the public at large. Additionally, Defendants ignored the available scientific studies and publications indicating an association between breast implants and Anaplastic Large Cell Lymphoma.

52.     Defendants also had a duty to exercise reasonable care in the manufacture, development, design, marketing, labeling, distributing, and sale of the product after it was approved for sale by the FDA in 2006, which does not impose duties or requirements materially different from those imposed by federal law. Defendants failed or refused to do so.

53.     At all material times, Defendants routinely maintained manufacturing facilities that failed to comply with applicable law and regulations in relation to:

    a.    The lack of approved software and systems;

    b.    The use of nonconforming products;

    c.    Documents which failed to include data or statistical rationale to support sampling plans used to test saline and gel-filled products;

    d.    The failure to initiate or take corrective action to reassess the results and adjust the values of product bioburden samples;

    e.    The omission of any reference in Allergan's reporting to its manufacturing processes as a potential cause of product failures relating to the inability to sterilize the product;

    f.    The omission of any reference in Allergan's reporting to its manufacturing processes as a potential cause of product failures relating to finished products which showed an "absence of material" or a "fail[ure] to contain gel";

    g.    The failure to adhere to an appropriate Environmental Monitoring Program;

    h.    Deficiencies in Allergan's sampling methods for finished product

testing;

i.      Deficiencies in Allergan's risk analyses and its investigation of non-conformances;

j.      Deficiencies in Allergan's environmental monitoring control procedures; and

k.      Citations to incomplete data and missing statistical or technical rationales to justify the performance of finished product testing.

54.     These deviations contributed to faulty manufacture of Allergan's Natrelle® silicone-filled breast implant products which were prone to rupture and which were thus defective and adulterated.

55.     Allergan failed to warn consumers, healthcare providers, and the FDA that ALCL or BIA-ALCL, and symptomatology attenuated thereto, was a potential risk of Allergan's Natrelle® silicone-filled breast implants, and that hundreds, if not thousands, of patients had suffered negative experiences and events as a result of such known risk.

56.     The risk of ALCL or BIA-ALCL was not disclosed or discussed in the product's consumer labeling, despite the availability of substantial evidence that an association existed and was established by at least 2008 as further detailed below.

57.     Allergan knew of the manufacturing failures, and multiple risks associated with the implants' design, and consciously responded by terminating the studies required within post-market surveillance, in favor of self-serving research that it could control, and by misrepresenting the risks to the users, physicians, and regulatory agencies.

58.     Defendants' conduct not only violated their federal regulatory duties and their duties under state law, but also caused a massive failure of information that has to be present in the medical and scientific community to protect a patient's interest.  Because Defendants failed to timely, completely, or accurately report their knowledge of the risks and complications associated with their silicone-filled breast implants, the public's knowledge of the risks associated with Allergan's Natrelle® silicone-filled breast implants

was seriously hampered and delayed.  This endangered patient safety, including Plaintiff Kendra F. Poniatowski' s safety.

## IV.   BREAST IMPLANT-ASSOCIATED ANAPLASTIC LARGE CELL LYMPHOMA

59.   Approximately 300,000 total breast implants are placed per year in the United States.  From 2000 to 2016, the number of breast augmentations in the United States rose 37%, and reconstructions after mastectomy rose 39%.

60.   Breast Implant-Associated Anaplastic Large Cell Lymphoma ("BIA-ALCL") is a rare T-cell Lymphoma that can develop following breast implants.  It is a type of non-Hodgkin's lymphoma, a cancer of the cells of the immune system.

61.   The most common presenting symptom of BIA-ALCL is a swollen breast caused by the formation of a delayed unilateral idiopathic seroma occurring between the implant surface and the capsule.

62.   Upon information and belief, the first case of anaplastic large cell lymphoma ("ALCL") in association with silicone breast implants was diagnosed in 1994 and reported in 1996.

63.   In November 2008, the Journal of the American Medical Association ("JAMA") published a retroactive analysis of 11 cases of ALCL between 1994 and 2006, and based upon preliminary findings, concluded that the evidence indicated an association between silicone breast prosthesis and ALCL.  De Jong, Daphne (2008). Anaplastic Large-Cell Lymphoma in Women with Breast Implants, *JAMA: Journal of the American Medical Association*, 300(17), 2030-55.

64.   On January 26, 2011, unbeknownst to Plaintiffs, the FDA released a report on BIA-ALCL, identifying twenty-seven (27) cases and listing as its primary finding the following: "[b]ased on the published case studies and epidemiological research, *the FDA believes that there is a possible association between breast implants and ALCL.*" (Emphasis added).

65.     Subsequent to the FDA's 2011 announcement pertaining to BIA-ALCL, additional medical studies have continued to confirm the causal relationship between breast implants and ALCL.

66.     In July 2014, the United Kingdom's Medicines and Healthcare Products Regulatory Agency ("MHRA") issued a Medical Device Alert "to further encourage healthcare professionals to report cases of ALCL in women who have breast implants or who have had them removed."

67.     In March 2015, an analysis identified 173 cases of ALCL.  That same month, the French National Cancer Institute announced "[t]here is a clearly established link between the occurrence of this disease and the presence of a breast implant."

68.      On May 19, 2016, the World Health Organization ("WHO") gave the disease an official designation as "BIA-ALCL" and classified it as a distinct clinical entity, *separate from other categories of ALCL.*

69.     Later in 2016, the National Comprehensive Cancer Network ("NCCN") released the first worldwide oncology standard for the disease.

70.     In November 2016, Australia's Therapeutic Goods Administration ("TGA") convened an expert advisory panel to discuss the association between breast implants and ALCL and provide ongoing advice.

71.     On March 21, 2017, the U.S. Food and Drug Administration (FDA) released a safety communication updating the current understanding of BIA-ALCL.

72.     In May 2017, a global analysis of forty (40) governmental databases identified 363 cases of BIA-ALCL with 258 being reported to the FDA.

73.     A September 2017 update from the FDA reported that the agency had received a total of 414 medical device reports ("MDRs") related to breast implants and ALCL, including 9 deaths.

74.     A recent JAMA Oncology article concluded that "[b]reast implants are associated with increased risk of breast-ALCL," but the absolute risk has not been

determined.  De Boer, Mintsje.  *Breast Implants and the Risk of Anaplastic Large-Cell Lymphoma in the Breast*.  JAMA Oncol. (published January 4, 2018).  The Dutch epidemiological study reports the risk of developing BIA-ALCL to be 421.8x higher in women with breast implants than in women with no implants, "implying an attributable risk approaching 100%."

75.    On May 9, 2018, Australia's Therapeutic Goods Administration ("TGA") reported 72 cases of ALCL in Australian patients.

76.    Despite knowledge on the part of Defendants of an association between breast implants and anaplastic large cell lymphoma dating back into the mid 1990's, Defendants purposefully failed to comply with their clearly-established post-market surveillance obligation and in doing so have exposed many hundreds of thousands of women to life-altering and avoidable cancer.

## V.    SPECIFIC ALLEGATIONS

77.    Plaintiff Kendra F. Poniatowski underwent a bilateral breast augmentation procedure on May 11, 2010 wherein Allergan Natrelle® Silicone Style 410 breast implants (the "product") were implanted.

78.    At the time the implants were placed into Mrs. Poniatowski' s body, she was not advised, nor did she have any independent knowledge, that the breast implants were anything other than safe, life-long products.  Nor was she advised that the product was associated with and/or known to cause BIA-ALCL.

79.    Mrs. Poniatowski was not advised, and had no independent knowledge that:

a.    A significant risk of ALCL existed; or

b.    A significant risk of BIA-ALCL existed; or

c.    She might need future surgery to remove the implants based upon contracting ALCL and/or BIA-ALCL; or

d.    She might need future surgery in the event of rupture, leakage, or seepage; or

e.    She might need future imaging and/or diagnostic procedures to check for, or evaluate ALCL and/or BIA-ALCL; or

f.    The silicone gel with which Allergan fills its silicone gel breast implants contains many compounds and metals which are toxic to the human body.

80.    Following her implants, Plaintiff began to experience discomfort, tightness pain, and swelling of the right breast.

81.    On May 15, 2017, Plaintiff went to Dr. Murphy, a plastic surgeon in Denver for complaints of swollen breasts.  Dr. Murphy advised he recently had learned about BIA-ALCL and suggested a biopsy.

82.    On May 21, 2017, Plaintiff went to Urgent Care Cherry Creek in Denver to get a second opinion while she waited to be seen at Rose Medical Center.  Plaintiff was prescribed antibiotics that did not make the swelling go down.

83.    On May 31, 2017, Plaintiff underwent a right breast needle cyst aspiration at The Breast Center Rose Medical Center in Denver, Colorado.

84.    Plaintiff's pathology reports of June 5th and June 12th had conflicting diagnoses, and Dr. Allen S. Feiner, M.D., F.A.C.P. from Rocky Mountain Cancer Centers recommended getting another specimen tested though the findings were most consistent with T-cell implant-associated non-Hodgkin's lymphoma.  June 20, 2017 pathology revealed diagnosis of breast implant associated anaplastic large cell lymphoma, initial staging.

85.    Plaintiff had implants removed on June 23, 2017.

86.    After surgery, Dr. Allen Feiner prescribed a CT scan and MRI follow up every 6 months to make sure the cancer had not returned.

87.    At the time the silicone-filled implants were placed into Mrs. Poniatowski's body, she was not advised, nor did she have any independent knowledge, that the Products were anything other than safe, life-long products.  Nor was she advised that the

product was associated and/or known to cause BIA-ALCL and that she would require future surgery and treatments.

88.      If Mrs. Poniatowski had been advised that implantation was associated with even the slightest risk of developing ALCL and/or BIA-ALCL, she would not have proceeded with implantation of the Products.

89.      Had the medical community been made aware of the existence of the true frequency, severity, and significance of BIA-ALCL caused by Allergan's Natrelle® silicone-filled breast implants, medical professionals and providers, including those who advised and served Plaintiff, would not have advised patients, including Plaintiff, to proceed with implantation of the products.

90.      Due to Defendants' failures to comply with their post-approval surveillance obligation, Mrs. Poniatowski did not suspect, nor did she have reason to suspect, that her injuries were caused by the breast implants, or by Defendants' tortious conduct.

91.      Defendants, through their misrepresentations and omissions, including their refusal or reckless failures to disclose or report defects and significant events as required by federal law and by state law which does not impose duties or requirements materially different from those imposed by federal law, concealed from Plaintiff and her healthcare providers the true and significant risks associated with the Products.

92.      All conditions precedent to filing this action have occurred, or have been satisfied or waived.

93.      At all times material hereto, Defendants knew or should have known that their silicone-filled breast implants were inherently dangerous with respect to known or knowable risk of BIA-ALCL.

94.      At all times material hereto, Defendants misrepresented and did misrepresent or omitted facts concerning the safety of Allergan's Natrelle® Silicone-Filled Breast Implants.

95.      Defendants' misrepresentations included knowingly withholding material

information about the known or knowable risks of the Products and BIA-ALCL from the public, including Mrs. Poniatowski, concerning the safety of the Products.

96.    At all times material hereto, Defendants knew or should have known and recklessly disregarded and/or omitted the fact that Allergan's Natrelle® Silicone-Filled Breast Implants cause BIA-ALCL.

97.    Notwithstanding the foregoing, Defendants continued to aggressively market Allergan's Natrelle® Silicone-Filled Breast Implants to consumers, including Mrs. Poniatowski, without disclosing and/or omitting the known or knowable risks involved with use of the Products.

98.    Defendants knew of Allergan's Natrelle® Silicone-Filled Breast Implants' defective and unreasonably dangerous nature, as set forth herein, but continued to design, develop, manufacture, market, distribute, and sell it so as to maximize sales and profits at the expense of the health and safety of the public, including Mrs. Poniatowski, in conscious and/or negligent disregard of the foreseeable harm caused by the Products.

99.    Defendants intentionally concealed and/or recklessly failed to disclose to the public, including Mrs. Poniatowski, the potentially life-threatening effects of the Products in order to ensure continued and increased sales.

100.    Defendants' intentional and/or reckless failure to disclose information deprived Mrs. Poniatowski of necessary information to enable her to weigh the true risks of using Allergan's Natrelle® Silicone-Filled Breast Implants against its benefits.

101.    As a direct and proximate result of Defendants' conscious and deliberate disregard for the rights and safety of consumers such as Mrs. Poniatowski, she suffered severe and permanent physical injuries.  Mrs. Poniatowski endured substantial pain and suffering and had to undergo extensive medical and surgical procedures.  Mrs. Poniatowski was forced to incur significant expenses for medical care and treatment as a direct and proximate result of her injuries due to Allergan's Natrelle® Silicone-Filled

Breast Implants.  Mrs. Poniatowski lost past earnings and has suffered a loss of earning capacity.  Mrs. Poniatowski suffered substantial economic loss, and has otherwise been physically, emotionally, and economically injured.  Mrs. Poniatowski's injuries and damages are permanent.

102.     The aforesaid conduct of Defendants was committed with knowing, conscious, and deliberate disregard for the rights and safety of consumers, including Mrs. Poniatowski, and was wanton and reckless, thereby entitling Mrs. Poniatowski to punitive damages in an amount appropriate to punish the Defendants and deter them from similar conduct in the future.

## VI.  CAUSES OF ACTION

## FIRST CAUSE OF ACTION

## NEGLIGENCE & NEGLIGENCE PER SE

### (Against All Defendants)

103.     Plaintiffs incorporate by reference all previous and subsequent paragraphs of this Complaint as if fully set forth here and further alleges as follows:

104.     At all relevant times, Defendants had a duty to Plaintiffs to use reasonable care, pursuant to the federal post-approval requirements, in conducting and reporting on post-approval studies, monitoring, testing, and adequately warning of the dangers, including the development of BIA-ALCL, related to Allergan Natrelle® Silicone-Filled Breast Implants.

105.     Defendants formulated, designed, made, created, labeled, packaged, tested, constructed, assembled, advertised, manufactured, sold, distributed, marketed, and promoted Allergan Natrelle® Silicone breast implants, including the product that was implanted into Plaintiff Kendra F. Poniatowski.  Plaintiff was implanted with Allergan's Natrelle® Silicone-Filled Breast Implants which were defective, dangerous, and adulterated upon manufacture, and without adequate warnings, in violation of state law, which does not impose duties or requirements materially different from those imposed by

federal law, including the PMA post-approval specifications and regulatory requirements, resulting in product failure and serious injury to Plaintiff.

106.     Defendants had a duty under parallel Colorado state law, including the Colorado Food and Drug Act (C.R.S.A. § 25-5-401 *et seq*.), to exercise reasonable care to provide adequate warning about the risks and dangers of Allergan Natrelle® Silicone breast implants, including the risk of developing BIA-ALCL, which was known or reasonably knowable to Defendants at the time of distribution, and that Defendants had come to know in light of adverse conditions and events experienced by patients in whom the Defendants' products were implanted.

107.     Defendants breached their duty in that they failed to warn Plaintiffs and their physicians, either directly or by not timely and accurately reporting to regulatory authorities, of the risks of serious defects, adulterations, and life-altering complications, including the development of BIA-ALCL, experienced by patients in whom the products were previously implanted.

108.     Specifically, upon information and belief, Defendants breached these duties and violated federal and state law by, inter alia: receiving and failing to warn of or report adverse events to the FDA or the public; failing to warn of or report Allergan Natrelle® Silicone breast implant failure to meet its performance specifications or perform as intended under the PMA and FDA requirements; and receiving and failing to warn or report to the FDA and the medical community their knowledge and information regarding complaints about Allergan Natrelle® Silicone breast implants, and additional injuries including:

a.     Adverse events requiring removal;

b.     Persistent and/or chronic inflammation or autoimmune impacts;

c.     Suspected cancer linked to breast implants;

d.     ALCL diagnoses linked to breast implants; and

e.     BIA-ALCL diagnoses linked to breast implants.

109.    Defendants disseminated false information by deliberately engaging in false and misleading sales and marketing tactics touting the aesthetic beauty of breast augmentation while minimizing and/or avoiding the risks, which only later, after causing avoidable injury, reached physicians, the medical community, and the public

110.    At all material times, Defendants knew and intended that the medical community and/or patients would rely upon Defendants' disseminated information in deciding whether to purchase and/or implant Allergan's Natrelle® Silicone-Filled Breast Implants.

111.    At all material times, Defendants knew and intended that patients who were implanted with Allergan's Natrelle® Silicone-Filled Breast Implants would, in reliance on false information, be placed in unnecessary, avoidable, and unreasonable danger due to unwarranted exposure to Allergan's Natrelle® Silicone Filled Breast Implants, causing them to develop cancer requiring future removal surgeries and to suffer debilitating injuries and conditions, as well as emotional turmoil attenuated thereto.

112.    Plaintiff and/or Plaintiff's physicians reasonably relied on Defendants' negligent misrepresentations and omissions, as Defendants intended, and would not have made the same decision(s) if provided the required information.

113.    As a proximate and foreseeable result of the foregoing misrepresentations by Defendants, Plaintiff has suffered and will continued to suffer from BIA-ALCL and its accompanying symptoms including, but not limited to, severe physical injuries, severe emotional distress, mental anguish, economic loss, and other injuries for which she is entitled to compensatory and other damages in an amount to be proven at trial.

114.    For each of the statutes and regulations cited in this Complaint, Plaintiff Kendra F. Poniatowski is within the class of persons the statutes or regulations are intended to protect, and Plaintiff's injuries are of the type of harm these statutes and regulations are designed to prevent.

115.    Defendants were negligent in their development, promotion, marketing,

manufacture, distribution, sale, and/or post-market surveillance of Allergan's Natrelle® Silicone-Filled Breast Implants in one or more of the following ways:

a.  Failing to identify the risk of BIA-ALCL in a timely manner;

b.  Failing to warn of the risk of BIA-ALCL;

c.  Designing, manufacturing, distributing, and selling Allergan's Natrelle® Silicone-Filled Breast Implants that are dangerous to the consuming public;

d.  Designing, manufacturing, distributing, and selling Allergan's Natrelle® Silicone-Filled Breast Implants which differ from the specifications set forth in the PMA, its Supplements, and the Conditions of Approval;

e.  Failing to conduct regular risk analyses of Allergan's Natrelle® Silicone-Filled Breast Implants; and

f.  Failing to exercise reasonable care in the manufacturing, inspection, testing, and quality control processes.

116.    As a proximate and legal result of Defendants' failure to exercise reasonable care in the warning, design, manufacture, distribution, and sale of Allergan's Natrelle® Silicone-Filled Breast Implants implanted into Plaintiff, Plaintiff has suffered and will continue to suffer severe injuries from BIA-ALCL and its accompanying symptoms, including physical injuries, pain and suffering, severe emotional distress, mental anguish, economic loss, future medical care and treatment, lost wages, lost future earning capacity, and other compensatory damages to which she is entitled as well as other damages in amount to be proven at trial.

WHEREFORE, Plaintiffs pray for judgment against Defendants as hereinafter set forth.

/ / /

/ / /

**SECOND CAUSE OF ACTION**

**STRICT PRODUCTS LIABILITY – FAILURE TO WARN**

**(Against All Defendants)**

117.     Plaintiffs incorporate by reference all previous and subsequent paragraphs of this Complaint as if fully set forth herein and further allege as follows:

118.     At all times relevant herein, Defendants were engaged in the business of designing, developing, manufacturing, testing, packaging, promoting, marketing, distributing, labeling, and/or selling Allergan Natrelle® Silicone breast implants.

119.     Defendants formulated, designed, made, created, labeled, packaged, tested, constructed, assembled, advertised, manufactured, sold, distributed, marketed, and promoted Allergan's Natrelle® Silicone-Filled Breast Implants, including those which were implanted into Plaintiff Kendra F. Poniatowski.

120.     Plaintiff was implanted with Allergan Natrelle® Silicone-Filled Breast Implants which were defective, dangerous, and adulterated upon manufacture, and which were manufactured with nonconforming materials and uncertified components, or with appropriate components in inappropriate quantities, in violation of the PMA specifications and regulatory requirements, resulting in product failure and serious injury to Plaintiff.

121.     At all times relevant herein, Defendants intended for the Allergan Natrelle® Silicone breast implants to be surgically implanted into the bodies of members of the general public, including Plaintiff, and knew or should have known that the product would  be surgically implanted into members of the general public, including Plaintiff.

122.     Defendants failed to warn Plaintiff and her physicians of the risk of serious defects, adulterations, and life altering-complications faced by patients, including patients who had reported adverse, hazardous ailments and conditions, rendering the product defective and unreasonably dangerous.

123.     Defendants also failed to revise their labeling to give warnings consistent with adverse event information which was known or available to Allergan at the time of

distribution, and failed to warn Plaintiffs of information which became known or available to Allergan after implantation into Plaintiff Kendra F. Poniatowski.

124.    Plaintiff's Allergan Natrelle® Silicone-Filled Breast Implants were defective and adulterated at the time of sale and distribution, and at the time they left Defendant Allergan's possession, and Defendants failed to adequately warn of the risks that the product was vulnerable to degradation, deterioration, ruptures, and leakage, and that the product was susceptible to causing ALCL and/or BIA-ALCL as suffered by Plaintiff Kendra F. Poniatowski.

125.    Defendants knew or should have known that the breast implants were associated with or did in fact cause ALCL and/or BIA-ALCL.  Defendants failed to adequately warn users, including Plaintiff, of Defendants' products and of these potential serious and harmful risks.

126.    Despite the fact that Defendants knew or should have known that implantation of Allergan's Natrelle® Silicone-Filled Breast Implants was unreasonably dangerous and was likely to seriously jeopardize the health of consuming patients, Defendants failed to identify, monitor, and warn of the defects, adulterations, health hazards, and increased risks associated with the product.

127.    The defects, adulterations, and increased risks inherent in Allergan's Natrelle® Silicone-Filled Breast Implants were not readily recognizable to the ordinary consumer, including Plaintiff and/or Plaintiff's physicians.  Neither Plaintiff nor her medical providers could, in the exercise of reasonable care, discovered the defects.

128.    Plaintiff's physician reasonably relied upon the skill, superior knowledge, and judgment of Defendants when Plaintiff consented to the implantation of Allergan's Natrelle® Silicone-Filled Breast Implants.

129.    At all relevant times, Plaintiff's Allergan Natrelle® Silicone breast implants were used and implanted into Plaintiff as intended by Defendants and in a manner reasonably foreseeable to Defendants.

130.     Allergan's   Natrelle®   Silicone-Filled   Breast   Implants,   which   were manufactured, marketed, promoted, distributed, and sold by Defendants, were expected to, and did, reach Plaintiff and/or Plaintiff's physician without substantial change in the condition in which they were sold.

131.     Defendants knew that Allergan's Natrelle® Silicone-Filled Breast Implants would be used by the ordinary purchaser or user without inspection for defects and adulterations and without knowledge of the hazards involved in such use.

132.     Allergan's Natrelle® Silicone-Filled Breast Implants, which were defectively manufactured, distributed, tested, sold, marketed, promoted, advertised, and represented by Defendants, caused Plaintiff's injury of BIA-ALCL, which would not have occurred but for the use of Allergan's Natrelle® Silicone-Filled Breast Implants.

133.     The defective warnings were a substantial contributing factor in bringing about the injuries to Plaintiff that would not have occurred but for the use of Allergan's Natrelle® Silicone-Filled Breast Implants.

134.     As a proximate result and/or substantial factor of Allergan's Natrelle® Silicone-Filled Breast Implants' defective and adulterated condition at the time they were sold, Plaintiff suffered and will continue to suffer severe physical injuries, pain and suffering, emotional distress, mental anguish, economic loss, future medical care and treatment, lost wages, lost future earning capacity, and other compensatory damages for which she is entitled to as well as other damages in an amount to be proven at trial.

135.     The wrongful acts, representations and/or omissions of Defendants, hereinabove set forth, were made, adopted, approved, authorized, endorsed and/or ratified by Defendants' officers, directors, or managing agents, and were done maliciously, oppressively, fraudulently and/or with a willful and knowing disregard of the probably dangerous consequences for the health and safety of its product users, including Plaintiff.   In making, adopting, approving, authorizing, endorsing and/or ratifying such conduct hereinabove set forth, the officers, directors, and/or managing agents of

Defendants acted with a willful and/or knowing disregard of the probably dangerous consequences, and/or acted with an awareness of the probably dangerous consequences of their conduct and deliberately failed to avoid those consequences, thereby creating a substantial risk of injury to Plaintiff and other users of their products. Plaintiffs are entitled to punitive and exemplary damages in an amount to be ascertained, which is appropriate to punish to set an example of Defendants and deter such behavior by them in the future.

WHEREFORE, Plaintiffs pray for judgment against Defendants as set forth.

## THIRD CAUSE OF ACTION

### BREACH OF IMPLIED WARRANTY

### (Against All Defendants)

136.     Plaintiffs incorporate by reference all previous and subsequent paragraphs of this Complaint as if fully set forth herein and further allege as follows:

137.     At all relevant times, Defendants marketed, manufactured, promoted, distributed, and/or sold Allergan's Natrelle® Silicone-Filled Breast Implants for use by the public at large and including Plaintiff herein.  Defendants knew the use for which their product was intended and impliedly warranted said product to be of merchantable quality, safe, and fit for use.

138.     At all relevant times, Plaintiff and Plaintiff's physician used and implanted Allergan Natrelle® Silicone breast implants for the purpose and in the manner intended by Defendants.

139.     At all relevant times, Allergan Natrelle® Silicone breast implants were not reasonably safe for its expected purpose, nor reasonably fit for the ordinary purpose for which it was sold and/or used, and it did not meet the expectations for the performance of the product when used in a customary, usual, and reasonably foreseeable manner.

140.     Plaintiff and/or her healthcare providers reasonably relied upon the skill and judgment of Defendants, and as such their implied warranty, in using Allergan Natrelle®

Silicone breast implants.   Contrary to the same, Allergan's Natrelle® Silicone-Filled Breast Implants were not of merchantable quality, safe, or fit for its intended use, because said product is unreasonably dangerous and unfit for the ordinary purpose for which it was intended and used.

141.     Defendants' breaches of their implied warranties under state law parallel their violations of federal law; the Allergan Natrelle® Silicone breast implants PMA specifically mandates, and state law, including Colorado law, independently requires, that any warranty statements must be truthful, accurate, and not misleading, and must be consistent with applicable federal and state laws.

142.     As a direct result of the breach of implied warranties by Defendants, or some or any of them, Plaintiff suffered and will continue to suffer profound injuries which are permanent and continuing in nature, required and will require medical treatment and hospitalization, have become and will become liable for medical and hospital expenses, lost and will lose financial gains, has been and will be kept from ordinary activities and duties, and has and will continue to experience mental and physical pain and suffering, disability and loss of enjoyment of life, all of which are damages that will continue into the future.   WHEREFORE, Plaintiffs pray for judgment against Defendants as set forth.

## **RELIEF REQUESTED**

WHEREFORE Plaintiffs pray for judgment against Defendants and, as appropriate to each cause of action alleged and as appropriate to the standing of Plaintiffs, as follows:

1) Economic and non-economic damages in an amount as provided by law and to be supported by evidence at trial;

2) For compensatory damages according to proof;

3) For an award of attorneys' fees and costs;

4) For prejudgment interest and the costs of suit;

5) Punitive or exemplary damages according to proof; and

6) For such other and further relief as this Court may deem just and

proper.

Dated: June 14, 2019

Respectfully submitted,

*/s/ Jennifer A. Lenze*
Jennifer A. Lenze, (CA Bar# 246858)
Amanda D. McGee (CA Bar# 282034)
Lenze Lawyers, PLC
1300 Highland Ave, Suite 207
Manhattan Beach, CA 90266
Telephone: 310-322-8800
Email: jlenze@lenzelawyers.com
Email: mcgee@lenzelawyers.com

*-and-*

Lowell W. Finson
Finson Law firm LLC
126 Westwind Mall
Marina Del Rey, CA 90292
Telephone: 602-377-2903
Facsimile: 310-425-3278
Email: lowellwfinson@gmail.com